# REAL PROPERTY EXCHANGE AGREEMENT

THIS REAL PROPERTY EXCHANGE AGREEMENT (Agreement) is made and entered into as of March 12, 2007, by and between Anita Hunter, (Exchanger) and 1031 Advance, Inc., a California corporation as the Qualified Intermediary (QI).

This Agreement is made and entered into with reference to the following facts:

A. Exchanger is the present fee owner of that certain real property located in the County of Santa Clara, State of California, commonly known as 3189 Cadillac Drive, San Jose, California, (Relinquished Property).

B. Exchanger desires to make a qualified tax-deferred exchange of Exchanger's interest in the Relinquished Property for other property or properties of like kind in accordance with Internal Revenue Code §1031, the Treasury Regulations promulgated under that section, and corresponding provisions of state tax legislation.

C. Exchanger has entered into a written Sale Contract with Bhogilal G. Suthar and Premila B. Suthar, Trustees of the Suthar Living Trust dated July 26, 2000, (Buyer) by which Exchanger has agreed to convey and Buyer has agreed to acquire Exchanger's interest in the Relinquished Property on the terms and conditions set forth in the Sale Contract.

D. QI is willing to act as a qualified intermediary, as that term is defined in Regulation §1.1031(k)-1(g)(4), in connection with Exchanger's exchange.

NOW, THEREFORE, in consideration of the mutual covenants, conditions, and agreements set forth in this Agreement, Exchanger and QI each agree as follows:

1. <u>Exchange of Properties</u>. Exchanger agrees to transfer Exchanger's interest in the Relinquished Property to QI in consideration of, and in exchange for, the transfer by QI to Exchanger of other property (or properties) of like kind (Replacement Property) to by identified by Exchanger and transferred to QI under the terms of this Agreement. QI agrees to transfer Exchanger's interest in the Relinquished Property to Buyer in a sale transaction and to acquire the Replacement Property from the Seller of the Replacement Property in a purchase transaction in furtherance of the exchange described in this Agreement.

2. <u>Assignment and Assumption of Sale Contract</u>.

    2.1    Exchanger hereby conditionally assigns all of its right, title and interest in the Sale Contract and certain of its obligations thereunder to Intermediary. More particularly, Exchanger assigns its obligation to sell the Relinquished Property specifically conditioned upon Exchanger's performing all other obligations required of Exchanger to Buyer and any obligations surviving the close and transfer of title to Buyer. Intermediary agrees to assume this obligation and perform said obligation in the manner provided for herein.

01-0701349                                        1

    2.2    All representations, covenants, and warranties, express or implied, made by Exchanger or Buyer with respect to the transfer of Exchanger's interest in the Relinquished Property and the transactions contemplated by the Sale Contract and this Agreement shall survive the transfer of Exchanger's interest in the Relinquished Property by Exchanger to QI and by QI to Buyer. All rights, remedies, liabilities, and obligations arising therefrom shall be deemed to be assigned and delegated by QI to Exchanger and assumed by Exchanger effective simultaneously with the closing of the sale of the Relinquished Property to Buyer.

    2.3    The assignment and assumption provided in this Agreement shall be null and void if Buyer or its assignee does not acquire title to Exchanger's interest in the Relinquished Property because of the Buyer's or assignee's breach or if either fails to waive any contingencies or if there is a failure of any condition precedent to the obligations of either Exchanger or Buyer to perform the Sale Contract.

3. <u>Relinquished Property Closing</u>.

    3.1    <u>Closing Agent</u>. First American Title Company, (Closing Agent) shall handle the processing of the exchange and sale of Exchanger's interest in the Relinquished Property. Exchanger and QI each covenant and agree to execute instructions to Closing Agent consistent with this Agreement for the purpose of effecting the exchange provided for in this Agreement and the subsequent sale of Exchanger's interest in the Relinquished Property to Buyer.

    3.2    <u>Prorations; Insurance</u>. All property taxes, insurance premiums, rents, and interest on Exchanger's interest in the Relinquished Property shall be prorated as of the closing.

    3.3    <u>Direct Deeding</u>. Without in any way affecting QI's obligation to acquire Exchanger's interest in the Relinquished Property, in order to save transfer taxes, title insurance premiums, and additional closing costs, QI shall direct Exchanger at the closing to execute a deed conveying legal title of Exchanger's interest in the Relinquished Property directly to the Buyer.

    3.4    <u>Timely Closing</u>. If QI does not transfer the Relinquished Property to Buyer on or before the date set forth in the Sale Contract, and the parties to this Agreement do not mutually agree to extend the closing date, this Agreement shall be rescinded, and Exchanger's assignment to QI of the Sale Contract shall be deemed null and void.

4. <u>QI's Fee</u>. Exchanger agrees to compensate Intermediary for the performance of the services of such as described herein in the amount of $500.00 which will be collected from the Relinquished Property closing. Exchanger and QI expressly agree that any cash proceeds received from the disposition of the Relinquished Property (Exchange Proceeds) shall be held in the account of QI with a nationally insured bank or savings institution. QI agrees to credit to the account of Exchanger interest on funds held by QI at QI's prevailing rate. Said account shall be in the name of QI and shall require the signature of an authorized officer of QI to permit the withdrawal of any portion thereof.

5. Identification and Acquisition of Replacement Property.

    5.1    Identification of Replacement Property. Before the end of the 45-day period beginning on the date of the transfer of Exchanger's interest in the Relinquished Property to QI, or at QI's direction, to the Buyer, the (Identification Period), Exchanger shall give written notice to QI of all property that may constitute Replacement Property. Any such identification may be revoked and a new Replacement Property identified on Exchanger's written notice to QI before the end of the Identification Period.

    5.2    Contracts To Acquire Replacement Property. Exchanger shall establish the terms of acquisition with the Seller(s) of any identified Replacement Property and shall provide QI with the form of acquisition agreement(s) acceptable to Exchanger. QI shall thereafter accept an assignment of Exchanger's contract rights to purchase any of the identified Replacement Property or, at Exchanger's direction, shall enter into a binding written contract in the form approved by Exchanger with such Seller(s) to acquire any identified Replacement Property.

6. Terms for Acquisition of the Replacement Property.

    6.1    Acquisition and Exchange. All costs of acquiring the Replacement Property, including cash payments toward the purchase price and all other acquisition fees incident thereto shall be borne first from the Exchange Proceeds held by QI from the sale of the Relinquished Property and then, to the extent necessary, from funds of Exchanger. QI shall acquire all Replacement Property specified by Exchanger through escrow/closing procedures specified in the relevant acquisition agreement. Concurrent with acquisition of each Replacement Property, QI shall cause the transfer and conveyance of the same to Exchanger. To facilitate the transfer of Replacement Property to Exchanger and to save additional transfer taxes and escrow fees, QI shall be deemed to have satisfied its obligations under this Agreement if it causes the Seller of any Replacement Property to transfer legal title of the same directly to Exchanger rather than QI first acquiring legal title and then conveying it to exchanger.

    6.2    Effect of Identified Replacement Property Remaining Unacquired. Exchanger expressly acknowledges that if, after the end of the Identification Period, and before the end of the Exchange Period, any identified Replacement Property that has not been acquired by Exchanger within the Exchange Period, for any reason other than for reasons beyond Exchanger's control, then any Exchange Proceeds that are not used during the Exchange Period to acquire any identified Replacement Property, and the interest on the entire Exchange Proceeds, shall not be disbursed to Exchanger until the end of the Exchange Period.

    6.3    Number of Properties To Be Acquired May Be Limited. If Exchanger specifically states in the Identification Form that Exchanger intends to acquire less than all of the identified Replacement Property (e.g., "Exchanger intends to acquire only one [two] of the three properties identified here"), then after Exchanger has, before the end of the Exchange Period, acquired that number of identified Replacement Property, Exchanger shall not be entitled to acquire any other property as Replacement Property, regardless of whether it is identified to QI.

7. <u>Termination of Exchange</u>.

    7.1    <u>Exchanger's Right to Cash</u>. Except as expressly provided in this Agreement, Exchanger shall have no right to request or receive anything other than like-kind property before expiration of the Exchange Period. Exchanger shall have no right, except as provided in paragraph 7.2, to receive, pledge, borrow, or otherwise obtain the benefits of the Exchange Proceeds including, without limitation, any interest income earned on the proceeds held in trust by QI under this Agreement, or other property held by Intermediary under this Agreement prior to the end of the Exchange Period.

    7.2    <u>Events Giving Right to Cash Before End of Exchange Period</u>. On expiration of the Identification Period, Exchanger shall have the right to require QI to distribute a sum equal to any unexpended portions of the Exchange Proceeds to Exchanger if (i) there remains no identified Replacement Property that has not been acquired; or (ii) QI has acquired all Replacement Property that was identified under Section 5 of this Agreement; (iii) Exchanger has acquired all Replacement Property that it is entitled to acquire under this Agreement; or (iv) it is impossible for QI to acquire any of the remaining identified Replacement Property because of material and substantial circumstances beyond Exchanger's control. The parties to this Agreement intend that these conditions be interpreted and imposed in a manner consistent with the limitations in Regulation §1.1031(k)-1(g)(6).

    7.3    <u>At End of Exchange Period</u>. The period within which the Exchanger must receive the Replacement Property (Exchange Period) begins on the date on which the Relinquished Property is transferred to Buyer and ends on the earlier of 180 days or the due date (including extensions) for the Exchanger's tax return for the taxable year in which the transfer of the Relinquished Property occurs. At the expiration of the Exchange Period, QI shall distribute to Exchanger a sum equal to any balance of the Exchange Proceeds and interest that QI has not already used to acquire Replacement Property for conveyance to Exchanger. The payment of such amounts shall be made in cash; provided, however, that to the extent that QI holds any Purchase Note, payment shall be made by QI's assignment, without recourse, of such Purchase Note to Exchanger (and the assignment of all security given with respect to such Purchase Note), plus the delivery to Exchanger of all payments of interest or principal on the Purchase Note that have been actually received by QI.

8. <u>Indemnity by Exchanger</u>.

    8.1    <u>General Indemnity</u>. Exchanger shall, and agrees to, hold QI harmless and indemnify QI, its directors, officers, employees, attorneys, and agents from any claim, liability, demand, expense, tax, or assessment of any nature or kind, expressed or implied, whether sounding in tort or in contract that may be asserted against QI, its directors, officers, employees, and agents, by any person (other than Exchanger), firm, corporation, governmental agency, or taxing authority, including but not limited to any and all supplemental tax bills issued by the tax collector in any county in which any transaction contemplated by this Agreement is consummated, that may arise from any acts or omissions, active or passive, related to carrying out the terms of this Agreement or from participation in this transaction, except any that arise from the gross negligence or willful misconduct of QI or any other person to be indemnified. Exchanger's obligations shall include, without limitation, and whether foreseeable or unforeseeable, all costs of any required or necessary repair, cleanup, or detoxification or decontamination of any of the Relinquished Property or

Replacement Property or any improvements on these Properties, and the preparation and implementation of any closure, remedial action, or other required plans in connection with these Properties. These obligations to indemnify QI shall survive the transfer of any such Property or improvements to QI's successor in interest. For purposes of these indemnity provisions, any acts or omissions of, or by employees, agents, assignees, or representatives of Exchanger or others acting for or on behalf of Exchanger (whether or not they are negligent, intentional, willful, or unlawful) shall be strictly attributable to Exchanger.

9. <u>Conflict With Prior Agreements</u>. If and to the extent that this Agreement conflicts with any prior written or oral agreement or understanding between the parties to this Agreement, the terms of this Agreement shall prevail. No modification or waiver of the terms of this Agreement shall be valid unless made in a writing signed by both parties.

10. <u>Attorney Fees</u>. Should suit be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover as an element of its costs and not as damages, reasonable attorneys fees to be fixed by the court.

11. <u>Survival</u>. The terms of this Agreement shall survive the closing and the delivery of Exchanger's interest in the Relinquished Property to QI and of the Replacement Property to Exchanger.

12. <u>Time</u>. Time is of the essence of this Agreement.

13. <u>Assignment</u>. This Agreement shall inure to the benefit of, and shall be binding on, the parties to this Agreement, their estates, heirs, representatives, successors in interest, and assigns; provided, however, that neither party shall have any right to assign this Agreement or any of that party's rights under it without the prior written consent of the other party, which such party may withhold in its sole discretion.

14. <u>Notices</u>. Any notice to be given hereunder shall be given by personal delivery or by depositing such notice in the United States Mail postage prepaid, and addressed to the respective party at the following address:

To Exchanger:

>  Anita Hunter
>  14107 Taos Drive
>  Saratoga, CA 95070

To QI:

>  1031 Advance, Inc.
>  1884 The Alameda
>  San Jose, CA 95126

Either party may change its address for notice by giving notice to the other party in accordance with this section.

15. <u>No Agency</u>. Exchanger acknowledges QI is acting as a principal in all the transactions contemplated by this Agreement and in no way shall be deemed an agent of Exchanger and to such extent, QI shall not have any obligations to Exchanger as an agent of Exchanger nor shall Exchanger have any obligations to QI as a principal of QI.

16. <u>Counterparts</u>. This Agreement may be executed in counterpart and shall be of the same force and effect as if one document had been signed by all parties.

17. <u>No Warranty on Tax Consequences</u>. QI makes no representation or warranty, nor shall QI bear any responsibility or liability concerning the federal or state tax consequences to Exchanger of the transaction contemplated in this Agreement, including, without limitation, the status of any Replacement Property as like-kind property or the qualification of this transaction as a like-kind exchange under Internal Revenue Code §1031 or applicable state tax laws.

18. <u>Force Majeure</u>. Intermediary shall not be liable to Exchanger for any failure or delay in performance including, but not limited to power failure, rolling blackouts, earthquake, fire, flood, war, insurrection, Acts of God, accident, strike or other labor disturbance, or interruption of or delay in transportation. Accordingly, Exchanger is strongly urged to take steps to schedule the acquisition of all Replacement Property sufficiently before the expiration of the Exchange Period so that any unforeseen delay will not result in a violation of the time constraints imposed.

19. <u>Governing Law</u>. This Agreement shall be interpreted under and governed by the laws of the State of California.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

EXCHANGER

Date: 3-27-07

Anita Hunter

QI

1031 ADVANCE, INC.,
a California corporation

Date: 3-12-07

By: _____
Steven Allred, Vice President

## ASSIGNMENT OF PURCHASE AND SALE AGREEMENT

(Relinquished Property)

This Assignment is entered into by and between Anita Hunter, (Exchanger) and 1031 Advance, Inc. as qualified intermediary (QI).

Exchanger, as Seller, entered into that certain Real Estate Purchase and Sale Agreement with Bhogilal G. Suthar and Premila B. Suthar, Trustees of the Suthar Living Trust dated July 26, 2000, (Buyer) for the property commonly known as 3189 Cadillac Drive, San Jose, California, (Relinquished Property). The Purchase and Sale Agreement, together with any and all amendments thereof collectively the Sale Agreement (Sale Agreement), is incorporated herein by this reference.

Exchanger and QI have executed an Exchange Agreement in which Exchanger has agreed to transfer the Relinquished Property to QI, in consideration of QI's acquisition of suitable replacement property and the transfer of the replacement property to Exchanger.

NOW, THEREFORE, the parties agree:

1. Exchanger hereby conditionally assigns all of its right, title and interest in the Sale Agreement and certain of its obligations thereunder to QI. More particularly, Exchanger assigns its obligations to sell the Relinquished Property specifically conditioned upon Exchanger's performing all other obligations required of Exchanger to Buyer and any obligations surviving the close and transfer of title to Buyer. QI agrees to assume this obligation and perform said obligation in the manner provided for herein.

All representations, covenants, and warranties, express or implied, made by Exchanger or Buyer with respect to the transfer of Exchanger's interest in the Relinquished Property and the transactions contemplated by the Sale Agreement shall survive the transfer of Exchanger's interest in the Relinquished Property by Exchanger to QI and by QI to Buyer.

2. QI hereby requests and directs Exchanger to deed the Relinquished Property directly to Buyer.

IN WITNESS WHEREOF, the parties have executed this agreement as their free and voluntary act and deed, on the date indicated by each signature.

EXCHANGER:

Date: 3-27-07     By: _____
                     Anita Hunter

*Signatures continued on next page*

01-0701349                            1

QI:

1031 ADVANCE, INC.,
a California corporation

Date: 3-12-07                By: _____
                                  Steven Allred, President

Acknowledged:

BUYER:

The Suthar Living Trust dated July 26, 2000

Date: 3/26/07               By: _____
                                  Bhogilal G. Suthar, Trustee

Date: 3/26/07               By: _____
                                  Premila B. Suthar, Trustee