# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re

THE 1031 TAX GROUP, LLC, *et al.*,

                Debtors.

----------------------------------------------------------x

:   Chapter 11
:
:   Case No. 07-11448 (MG)
:   Jointly Administered
:
:
:

**DECLARATION OF ANDREW D. VELEZ-RIVERA IN SUPPORT OF THE
UNITED STATES TRUSTEE'S MOTION FOR ORDER DIRECTING THE
APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE,
CONVERSION OF THE CASES TO CHAPTER 7**

     1.     I am a Trial Attorney for movant, Diana G. Adams, the Acting United States Trustee

for Region 2 (the "United States Trustee"). Within her Office, I am responsible for monitoring the

chapter 11 cases captioned above on her behalf. I make this declaration based on personal

knowledge, information and belief formed from records of the Office of the United States Trustee

kept in the ordinary course of its business, and my personal review earlier today of the docket of this

case on the PACER information system. If called, I would testify to the following:

     2.     On May 14, 2007 (the "Petition Date"), The 1031 Tax Group, LLC (the "Lead

Debtor") and related entities (the "Debtors")[1] filed voluntary petitions for relief under chapter 11 of

Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have continued to operate

---

    [1]   The Debtors are The 1031 Tax Group, LLC, 1031 Advance 132 LLC, 1031 Advance, Inc., 1031 TG Oak Harbor LLC, Atlantic Exchange Company, Inc., Atlantic Exchange Company LLC, Exchange Management, LLC, Investment Exchange Group, LLC (aka "IXG"), National Exchange Accommodators, LLC, National Exchange Services QI, Ltd., National Intermediary, Ltd., NRC 1031, LLC, Real Estate Exchange Services, Inc., Rutherford Investment LLC, Security 1031 Services, LLC, and Shamrock Holdings Group, LLC. The Debtors recently moved to dismiss the cases of two debtors: Exchange Management, LLC and National Intermediary, Ltd. Docket No. 83.

their businesses and manage their properties as debtors in possession under sections 1107 and 1108

of the Bankruptcy Code.  The United States Trustee has begun the process of appointing an official

committee, but no Official Committee has been appointed to date.

**The Debtors' Businesses**

3.     The Debtors operate as "qualified intermediaries" for deferred like-kind property

exchanges consummated under section 1031 of the Internal Revenue Code.  Declaration of James M.

Lukenda, Docket No. 2, (the "First-Day Decl."), at ¶ 7.  One of the main purposes of such exchanges

is to defer taxation on gains resulting from the sale of non-residential property, including personal

property.  *Id.*; IRS Form 8824, General Instructions, Like-Kind Exchanges (IRS Form 8824), at 3;

www.1031.org/aboutfea.  A true and correct copy of IRS Form 8824 is attached hereto as Exhibit A;

and relevant screen captures of www.1031.org/aboutfea are attached hereto as Exhibit B.

4.     Though engaged in the business of implementing Federal tax transactions, qualified

intermediaries like the Debtors are not subject to Federal or state regulation.  *Id.*  The interests of the

"exchange industry," however, are often represented by the Federation of Exchange Accommodators,

which is the only national trade association organized to represent 1031 exchange businesses.

www.1031.org.  The FEA administers a certification program.  See www.1031ces.org.  A true and

correct copy of relevant screen captures of www.1031ces.org are attached hereto as Exhibit C.

5.     Edward. H. Okun, an individual, is the sole member, sole manager or sole director, as

the case may be, of each of the Debtors.  *See* ECF Docket No. 1, Voluntary Petitions for each

Debtor, Written Consent in Lieu of Meeting of the Sole Member (the "Resolutions"), a true and

correct copy of which is attached hereto as Exhibit D.

2

6.    Mr. Okun's ownership interests are newly-acquired; he acquired the Debtors between August 2005 and December 2006. First-Day Decl., ¶ 7.

7.    The Debtors performed two types of exchanges, ordinary and "reverse" exchanges. Motion, at ¶ 8. In an ordinary exchange, the "Exchanger" first sells his or her property and deposits the proceeds with a qualified intermediary, like one or more of the Debtors. *Id.* Deposits of this kind are needed to preserve the tax deferral attributes of the exchange, because applicable law prohibits the Exchanger from taking title to the proceeds while the property exchange occurs. *Id.*; Investment Exchange Group, Section 1031 Exchange Handbook ("Handbook"), at 10; www.1031.org/ about1031/ accommodators. The Exchanger then has 45 days from the date of the sale of the property to identify like-kind replacement property. Handbook, at 7. The purchase of the Exchanger's new property must be consummated with the proceeds of the sale of his or her prior property. *Id.*, at 10. Like the making of their deposits and the 45-day identification requirement, the closing on the later property is a statutory requirements, and must occur within 180 days from the date of the closing of the sale of the Exchanger's prior property in order for the tax deferral attributes of the exchange to be preserved. *Id.*, at 9. A true and correct copy of relevant pages of the Handbook is attached hereto as Exhibit E, and a true and correct copy of relevant screen captures of www.1031.org/ about1031/accommodators are attached hereto as Exhibit F.

8.    Certain of the Debtors performed "reverse exchanges." In this type of tax-deferral exchange, the deadlines generally are preserved, but the Exchanger identifies his or her like-kind replacement property before closing the sale of the prior property. First-Day Decl., ¶ 8; IRS Form 8824, at 3. In a reverse exchange, title to the replacement property is held in a single-purpose entity, (usually an "LLC"). First-Day Decl., ¶ 9. The LLC's created by the Debtors to hold title in

replacement properties have not filed voluntary petitions for relief under the Bankruptcy Code. *Id.*, ¶ 9.

9.    According to the Debtors, on the Petition Date, there were over 300 open exchange contracts representing an estimated liability of $151 million. First-Day Decl., ¶ 12. Among these were over 100 open reverse exchange contracts, with an undetermined aggregate value. *Id.*, at ¶ 9.

10.    In a typical exchange transaction, the Exchanger and the Lead Debtor agreed that the proceeds of the sale of the Exchanger's relinquished property would be held in an account in the name of the Lead Debtor with a federally insured bank or savings institution. Exchange Agreement, § 7. (A true and correct copy of an Exchange Agreement form is attached hereto as Exhibit G.) It is the United States Trustee's understanding that the aforementioned accounts could contain pooled Exchanger funds, but that accountings were required on an individual Exchanger basis. *See id.,* and Investment Exchange Group, LLC *et al.* v. Colorado Capital Bank, Adv. Pro. No. 07-01710 (MG), (the "Colorado Adversary"), ECF Docket No. 1. The United States Trustee has also been advised that such pooled accounts should not contain operating or other funds of the Debtors.

**The Debtors' Pre-Petition Loans to Non-Debtor Affiliates**

11.    Mr. Okun is the sole member and Chief Executive Officer (CEO) of Investment Properties of America, LLC (IPofA), a non-Debtor. First-Day Decl., ¶¶ 10 & 17; www.IPofA.com. IPofA is a "diversified real estate investment and management company, which acquires, develops and manages properties, primarily leased to major national and regional retail companies under net leases." *Id.* For example, according to IPofA, it owns the West Oaks Mall, a 1.1 million square foot shopping complex in Houston, Texas, and Columbus Works, an office/industrial complex in

4

Columbus, Ohio, among other properties.  *Id.*  A true and correct copy of relevant screen captures of www.ipofa.com is attached hereto as Exhibit H.

12.    Beginning as far back as 2005, IPofA borrowed funds from the Debtors in a series of promissory notes (the "Notes").  First-Day Decl., ¶ 17.  It appears that payments were made on some of the Notes, but not in amounts sufficient to prevent the total amount due on the Notes from increasing.  First-Day Decl., ¶ 17.  "The Note balance grew from approximately $55 million at December 31, 2005 to approximately $113 million at December 31, 2006 and approximately $132 million at May 11, 2007" (*i.e.* three days before the Petition Date).  First-Day Decl., ¶ 17.

13.    The Notes, in the approximate amount of at least $132.0 million, are by far the Debtors' single primary asset, and the main source of recovery for creditor distributions in these bankruptcy cases.  First-Day Decl., ¶ 17.  The Debtors' proposed professionals have advised the Office of the United States Trustee orally that all of the Notes are delinquent, but that the Debtors have not called them into default.

14.    The Notes, however, are not the only promissory notes IPofA has delivered to the Debtors.  Instead, they constitute only "the Notes that have been made available [to the Debtors' professionals] for examination."  *Id.*, ¶ 17.  The United States Trustee has been provided with copies of other promissory notes not made available to the Debtors' professionals as of the filing of the First-Day Declaration.  Specifically, the United States Trustee has been provided with copies of ten additional promissory notes from IPofA to the Lead Debtor, in the total face amount $26.1 million (the "Additional Notes").  The Additional Notes date from January 17, 2007 to March 23, 2007, and range in face value from $1.0 million to $8.0 million.  Unlike the Notes, which have 180-day maturity dates, First-Day Decl., ¶ 17, the Additional Notes are payable on demand.  Collectively, the

5

Notes and the Additional Notes total $158.1 million, and constitute 87.5 percent of the Debtors' total combined assets. True and correct copies of the Additional Notes are attached hereto as Exhibit I.

15.     It is the understanding of the United States Trustee that the loans from the Debtors to IPofA were funded with proceeds of the sales of Exchangers' properties, and that neither the Debtors nor IPofA notified the Exchangers that their proceeds would be used to fund the inter-company loans.

### Changes in the Debtors' Pre-Petition Management and Capitalization, and Other Developments

16.     On April 26, 2007, the United States District Court for the Eastern District of Virginia issued a Search Warrant commanding the United States Postal Inspector to search and seize various communications, documents and records of the Debtors and related entities. In the Matter of the Search of the Premises of 10800 Midlothian Turnpike, Case No. 3:07ms80 (U.S.D.C., E.D. Va.). The Postal Inspector executed the Search Warrant on April 27, 2007. First-Day Decl., ¶ 23.

17.     In the three weeks before the Petition Date, there were various apparently-conflicting changes in the management structure of the Debtors. Upon information and belief, on April 25, 2007, a prior President and CEO of the Debtors, Janet Dashiell, was relieved of her duties, and Richard B. Simring was then appointed as Interim President and CEO of the Debtors. According to other documents, however, R. David Field was appointed as President of the Lead Debtor on that day. Colorado Adversary, ECF Docket No. 1, Complaint, ¶ 35. (*But see* ¶ 19 below).

18.     According to the Debtors, during negotiations held the week preceding the Petition Date, Mr. Okun agreed to execute a personal guarantee of the Notes. First-Day Decl., ¶ 20.[2] Reportedly in order to help ensure creditor distributions in this case, Mr. Okun also agreed in principle to collateralize his guarantee with assets of IPofA and other entities he controls. *Id.* On the Petition Date, the Debtors expected that the collateralization, which did not occur the week preceding the Petition Date, would be consummated post-petition. *Id.* On the other hand, the Debtors did not set forth a timetable for the collateralization, *see id.*, and certain customers have more recently stated that within one week of the commencement of the cases, to their knowledge, Mr. Okun encumbered assets that could be available to satisfy claims. Motion to Convert Chapter 11 Case to Chapter 7 and for Prejudgment Restraint of Property and Surrender of Passport, Docket No. 92, ¶ 12, at 12.

19.     On or about May 11, *i.e.* three days prior to the Petition Date, Mr. Lukenda, a Managing Director of Huron Consulting Services LLC ("Huron"), was appointed as Chief Restructuring Officer (CRO) of the Debtors. Resolutions effectuating the appointment were executed by Mr. Okun the following day (May 12). *See* ECF Docket No. 1, Resolutions. Furthermore, it appears that R. David Field was also then appointed as President of the Lead Debtor. First-Day Decl., Schedule 10. (*But see* ¶ 17 above).

20.     In addition, according to the Debtors, "it is currently anticipated that an independent sole Manager will be chosen shortly to assume the duties of [Mr. Okun] to act as, in effect, the board of directors of the Debtors." First-Day Decl., Schedule 12.

---

[2] Whether the guarantee also covers monies due to the Debtors under the Additional Notes, or any other promissory notes yet to be discovered, is not known.

**Post-Petition Developments**

21.    On May 17, 2007, the United States Trustee filed her objections to the proposed

retention of Dreier, LLP, the Debtors' proposed bankruptcy counsel, under section 327(a) of the

Bankruptcy Code. Docket No. 24 (the "Dreier Objection"). In addition to objecting on the grounds

that the firm needed to make further disclosures under the circumstances, the United States Trustee

objected to the firm's retention on the grounds that it is not disinterested. *Id.*, ¶¶ 13-23, at 5-9.

Specifically, the firm received $370,000 from IPofA prior to the Petition Date, of which it applied

approximately $320,000 to pre-petition fees. Docket No. 9, Disinterestedness Affidavit, ¶ 12, at 7,

and Docket No. 10, Disclosure of Compensation of Dreier, LLP, at ¶¶ 3-4. As of the Petition Date,

approximately $50,000 was left unapplied, which the firm intends to use as a retainer. *Id.*

22.    Similarly, Huron has advised the United States Trustee's Office that IPofA also was

the source of the funds that it received prior to the Petition Date. Dreier Objection, ¶ 9, at 4.

23.    Following an initial hearing in the cases on May 17, 2007, at which it considered the

Debtors' applications to employ Dreier and Huron, the Court entered interim orders approving the

retentions. *See* Docket Nos. 57 and 59.

24.    Certain of the Debtors filed an adversary proceeding on May 22, seeking declaratory

relief that the funds held in one of the pooled accounts at Colorado Capital Bank are property of that

bank vis-a-vis property of their estates. Complaint, Colorado Adversary, ECF Docket No. 1. The

Colorado Adversary, however, does not address the central issue of whether funds held in pooled

bank accounts is customer property vis-a-vis property of the estates. *See generally*, Preliminary Brief

of Sierra Group BPT, LLC on Effect of Bankruptcy Filing of Investment Exchange Group, LLC,

Docket No. 73.

8

25.     One of the Debtors, Investment Exchange Group, LLC (aka "IXG") advertised that exchange transactions of six of the Debtors were guaranteed in writing and fully secured by a $10.0 million Fidelity Bond.  The Debtors are the Lead Debtor, Atlantic Exchange Company, Investment Exchange Group, National Exchange Services, Real Estate Exchange Services, and Security 1031 Services, Inc.  A non-Debtor, SOS Holdings, Inc., also appears on the bond.  www.ixg.com.  A true and correct copy of relevant screen captures of www.ixg.com are attached hereto as Exhibit J.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this twenty ninth day of May 2007, at New York, New York.

*/s/ Andrew D. Velez-Rivera*
(AV-2010)

9

# EXHIBIT I

## PROMISSORY NOTE

NOTE DATE:          January 17, 2007
MATURITY DATE:      On Demand                              $2,000,000

FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $2,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid balance at the annual interest rates defined below.  Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

**Interest Accrual.**  Interest on the principal amount outstanding shall accrue at the rate of the 8.0%.  Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

**Repayment Terms.**  On demand.

**Waiver of Presentment and Notice of Dishonor.**  The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER                        Okun Holdings, Inc.,
                                A Virginia corporation

                                By:
                                     Edward H. Okun, President

## PROMISSORY NOTE

NOTE DATE:        January 24, 2007
MATURITY DATE:    On Demand                                        $1,000,000

FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $1,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid balance at the annual interest rates defined below.  Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

**Interest Accrual.**  Interest on the principal amount outstanding shall accrue at the rate of the 8.0%.  Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

**Repayment Terms.**  On demand.

**Waiver of Presentment and Notice of Dishonor.**  The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER                    Okun Holdings, Inc.,
                            A Virginia corporation

                            By: _____
                               Edward H. Okun, President

## PROMISSORY NOTE

| | | |
|---|---|---|
| NOTE DATE: | January 31, 2007 | |
| MATURITY DATE: | On Demand | $3,000,000 |

FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $3,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid balance at the annual interest rates defined below. Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

**Interest Accrual.** Interest on the principal amount outstanding shall accrue at the rate of the 8.0%. Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

**Repayment Terms.** On demand.

**Waiver of Presentment and Notice of Dishonor.** The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER

Okun Holdings, Inc.,
A Virginia corporation

By:

Edward H. Okun, President

## PROMISSORY NOTE

NOTE DATE:    March 8, 2007
MATURITY DATE:    On Demand        $1,000,000

    FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $1,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid balance at the annual interest rates defined below.  Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

    **Interest Accrual.**  Interest on the principal amount outstanding shall accrue at the rate of the 8.0%.  Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

    **Repayment Terms.**  On demand.

    **Waiver of Presentment and Notice of Dishonor.**  The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER        Okun Holdings, Inc.,
              A Virginia corporation

              By:
                  Edward H. Okun, President

**PROMISSORY NOTE**

NOTE DATE:       February 15, 2007                                   $2,000,000
MATURITY DATE:  On Demand

     FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $2,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid principal balance at the annual interest rates defined below.  Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

     **Interest Accrual.**  Interest on the principal amount outstanding shall accrue at the rate of the 8.0%.  Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

     **Repayment Terms.**  On demand.

     **Waiver of Presentment and Notice of Dishonor.**  The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER                          Okun Holdings, Inc.,
                                  a Virginia corporation

                                  By: _____
                                      Edward H. Okun, President

**PROMISSORY NOTE**

NOTE DATE:       February 22, 2007                                    $8,000,000
MATURITY DATE:  On Demand

FOR VALUE RECEIVED, Edward H. Okun, a Virginia limited liability company (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $8,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid principal balance at the annual interest rates defined below.   Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

**Interest Accrual.**  Interest on the principal amount outstanding shall accrue at the rate of the 8.0%.  Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

**Repayment Terms.**  On demand.

**Waiver of Presentment and Notice of Dishonor.**  The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER

_Edward H. Okun_
Edward H. Okun

*Paid in full*
*2/27/07*

## PROMISSORY NOTE

NOTE DATE:          March 1, 2007
MATURITY DATE:     On Demand                     $1,400,000

       FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $1,400,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid balance at the annual interest rates defined below. Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

       **Interest Accrual.** Interest on the principal amount outstanding shall accrue at the rate of the 8.0%. Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

       **Repayment Terms.** On demand.

       **Waiver of Presentment and Notice of Dishonor.** The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER              Okun Holdings, Inc.,
                          A Virginia corporation

                          By: _____
                               Edward H. Okun, President

**PROMISSORY NOTE**

NOTE DATE:      March 2, 2007                                    $2,000,000
MATURITY DATE:  On Demand

     FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $2,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid principal balance at the annual interest rates defined below.  Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

     **Interest Accrual.**  Interest on the principal amount outstanding shall accrue at the rate of the 8.0%.  Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

     **Repayment Terms.**  On demand.

     **Waiver of Presentment and Notice of Dishonor.**  The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER            Okun Holdings, Inc.,
                       a Virginia corporation

                       By: _____
                           Edward H. Okun, President

## PROMISSORY NOTE

NOTE DATE:        March 15, 2007
MATURITY DATE:    On Demand              $4,700,000

FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $4,700,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid balance at the annual interest rates defined below. Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

**Interest Accrual.** Interest on the principal amount outstanding shall accrue at the rate of the 8.0%. Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

**Repayment Terms.** On demand.

**Waiver of Presentment and Notice of Dishonor.** The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER                Okun Holdings, Inc.,
                            A Virginia corporation

                            By:
                                  Edward H. Okun, President

## PROMISSORY NOTE

NOTE DATE:          March 23, 2007
MATURITY DATE:      On Demand                                    $1,000,000

FOR VALUE RECEIVED, Okun Holdings, Inc. (the "Borrower"), promises to pay to the order of The 1031 Tax Group, LLC, a Delaware limited liability company (the "Lender"), at its principal office or such other address as the Lender or holder may designate from time to time, the principal sum of $1,000,000, or the amount shown on the Lender's records to be outstanding, plus interest (calculated on the basis of actual days elapsed in a 360-day year) accruing each day on the unpaid balance at the annual interest rates defined below. Absent manifest error, the Lender's records shall be conclusive evidence of the principal and accrued interest owing hereunder.

**Interest Accrual.** Interest on the principal amount outstanding shall accrue at the rate of the 8.0%. Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed.

**Repayment Terms.** On demand.

**Waiver of Presentment and Notice of Dishonor.** The Borrower hereby waives presentment, demand for payment, notice of dishonor, protest and any notice relating to the acceleration of the maturity of this Note.

BORROWER                    Okun Holdings, Inc.,
                            A Virginia corporation

                            By: _____
                                Edward H. Okun, President

EXHIBIT J

IXG - 1031 Investment Exchange - Bonding and Security Guarantee

http://www.ixg1031.com/who/bonding-security.php



- → 1031 EXCHANGE
- → 1031 REVERSE EXCHANGE
- → TIC RESOURCES
- → OTHER 1031 EXCHANGES
- → CONTACT US

info@ixg1031.com
800.908.1031
<< Back to Home Page

| WHO IS IXG? ▶ | 1031 RESOURCE ▶ | 1031 LIBRARY ▶ | 1031 EDUCATION ▶ |

::: news :::
Subscribe to the
new IXG Podcast!

IRS Gives 'Blessing' to
Related Parties (PDF)

::: ask Drew :::
fast answers to your
1031 Exchange questions

::: get started! :::
Begin your 1031 exchange
with our simple form



Download your FREE copy
of our 1031 Exchange
Handbook (PDF-200k)

## The Largest Bond. The Highest Assurance.

Providing our clients with the highest level of security and protection is paramount. That's why all IXG exchange funds are fully secured with a **$10 million Fidelity Bond** -- *one of the largest bonding programs in the industry*. All exchange proceeds are FDIC insured and are additionally collateralized, government-backed securities by the banking institution. Interest is paid directly to you, and we guarantee our exchanges in writing with an Audit Protection Statement.

Below please find a **Copy of Our Bond** as well as a sample of our **Audit Protection Statement.**

**Copy of Our Bond**

 LOCKTON

EVIDENCE OF INSURANCE

FIDELITY BOND PROGRAM

This document certifies that:

**1031 Tax Group, LLC**
**Atlantic Exchange Company**
**National Exchange Group**
**National Exchange Services**
**Real Estate Exchange Services**
**Security 1031 Services, Inc.**
**SOS Holdings, Inc.**

is insured under a Fidelity Bond underwritten by Continental Casualty Company, a member of the CNA Insurance Companies for the effective period of

November 11, 2006 – August 15, 2007

Description of Coverage:    The Fidelity Bond insures against losses resulting from dishonest acts, such as embezzlement, conversion, fraud, theft, etc., of the insured's employees against the insured, as well as the insured's employees, partners and owners against the insured's clients.

Policy Number:    CNA        268117856
                  Chubb      6801-8602

Amount of Coverage:    $10,000,000    Per Occurrence

Insurance Broker:    Claudia Porras
                     Lockton Insurance Brokers, Inc.
                     Two Embarcadero Center, Suite 1700
                     San Francisco, CA 94111
                     Tel: (415) 568-4037 / Fax: (415) 092-4037

LOCKTON INSURANCE BROKERS, INC.

Claudia Porras
Authorized Representative

IXG - 1031 Investment Exchange – Bonding and Security Guarantee

http://www.ixg1031.com/who/bonding-security.php



## Audit Protection Statement

We understand the importance of your security. We guarantee our exchanges in writing, for your peace of mind. The following excerpt is taken directly from our 1031 client exchange documents. 8.2 QI covenants, represents and warrants to Exchanger that:

**(a)** QI takes full responsibility for the correct preparation of documents that are, or should have been, prepared for this exchange. If any penalty arises from QI's failure to prepare, or correctly prepare, any document required for the exchange, QI agrees to pay such penalties arising from its negligence.

**(b)** If this exchange is audited, QI will represent and defend the exchange at no additional cost to Exchanger.

**(c)** QI will keep in force insurance under a Fidelity Bond Program insuring Exchanger against losses resulting from dishonest acts of QI's employees, members and managers in the amount of $10,000,000 per occurrence.

**Contact us today for your free consultation:**
**800.908.1031 or 303.331.1031**
**Or email Drew McCabe**

Copyright 2005 – IXG
All Rights Reserved.
Site Map | Privacy Notice

"I have personally used Investment Exchange Group on many occasions in addition to recommending them to my clients. In all cases these transactions proceeded smoothly and were handled in a professional manner. It is really nice to know that all aspects will be handled correctly in order to assure a smooth transaction from start to finish."

**Andy Ahroon, Broker/Owner GRI, CRS**



1031 Exchange | 1031 Reverse Exchange | TIC Resources | Other 1031 Exchanges | Who is IXG? | 1031 Resource | Library | Education

5/17/2007 12:06 PM