United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Anita Hunter, | NO. C 07-02795 JW |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| v. | |
| Edward H. Okun, et al., | |
| Defendants. | |

## I. INTRODUCTION

Anita Hunter ("Plaintiff") filed this putative diversity class action against Edward Okun ("Okun"), Okun Holdings, Inc. ("Holdings"), Investment Properties of America, LLC ("IPofA"), and Richard Simring ("Simring") (collectively, "Defendants"), alleging *inter alia*, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, conversion, and breach of contract. Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. The Court conducted a hearing on November 13, 2007. Based on the papers submitted to date and the arguments of counsel at the hearing, the Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction.

## II. BACKGROUND

In a Complaint filed on May 30, 2007, Plaintiff alleges as follows:

> Defendant Okun is an individual who resides in Florida. (Complaint ¶ 11, Docket Item No. 1.) Defendant Holdings is a limited liability company organized and existing under the laws of Virginia, of which Okun is a member and holds the position of Director.

(Complaint ¶ 12.) Defendant IPofA is a limited liability company organized and existing under the laws of Virginia, of which Okun is a member and holds the position of CEO. (Complaint ¶ 13.) Defendant Simring is an individual who resides in Florida. (Complaint ¶ 15.) Defendants owned or operated The 1031 Tax Group, LLC ("Tax Group"), a company that facilitated 1031 exchanges for real estate owned by certain real estate investors. (Complaint ¶ 33.)

From 2006 through May 13, 2007, Defendants and Tax Group acquired various privately held exchange companies throughout the United States. (Complaint ¶ 34.) Simring was the President and CEO of Tax Group. (Complaint ¶ 15.)

On March 27, 2007, to accomplish a 1031 exchange, Plaintiff entered into an Exchange Agreement ("Agreement") with Defendants through Tax Group's subsidiary, 1031 Advance, Inc. ("Advance") located in San Jose, California. (Complaint ¶ 35.) Pursuant to the terms of the Agreement, the proceeds from the sale of Plaintiff's real property (hereafter "exchange proceeds") were to be held by Defendants, in trust, in a qualified intermediary account with a nationally insured bank or savings institution. (Complaint ¶ 36.)

On March 29, 2007, Plaintiff deposited with Defendants and Defendants accepted from Plaintiff exchange proceeds in the amount $1,356,294.58. (Complaint ¶ 38.) Defendants then deposited Plaintiff's exchange proceeds into the account held in the name of 1031 Advance, Inc., at Countrywide Bank in Alexandria, Virginia. (Complaint ¶ 39.)

On April 30, 2007, Plaintiff received notice from Defendants that the San Jose subsidiary of Tax Group had ceased conducting business. (Complaint ¶ 40.) Plaintiff has demanded the return of her exchange proceeds from Defendants, and Defendants have refused. (Complaint ¶ 41.)

Defendants had access to the exchange proceeds deposited by Plaintiff through financial accounts held by Tax Group and its subsidiaries for the benefit of their clients.

2

(Complaint ¶ 42.) Defendants used Plaintiff's exchange proceeds for their individual benefit and for the benefit of all Defendants and Tax Group by withdrawing the exchange proceeds and depositing them into accounts held by or for the benefit of Defendants and Tax Group or by purchasing real and personal property for the benefit of Defendants and Tax Group, effectively commingling Plaintiff's exchange proceeds with their own assets. (Complaint ¶ 43.)

Defendants and Tax Group were operating a fraudulent investment scheme based on the premise that they would gain new clients to deposit their exchange proceeds with Defendants and Tax Group. Defendants and Tax Group could then replenish Plaintiff's account from which Defendants and Tax Group had withdrawn Plaintiff's exchange proceeds. (Complaint ¶ 44.)

On May 14, 2007, Tax Group filed a voluntary petition in the U.S. Bankruptcy Court for the Southern District of New York. Tax Group's Schedules allege approximately $133,000,000.00 in outstanding liabilities, the majority of which is owed to exchange clients of Tax Group and its subsidiaries. (Complaint ¶ 45.)

The business of exchange accommodators is conducted substantially without governmental regulation, and such exchange companies have control over large sums of money, which they hold in trust for their clients. These funds are commonly referred to as float. Exchange companies predominately use segregated or pooled accounts to invest their float in financial institutions that provide a return and, more importantly, that provide liquidity to the exchange accommodator. (Complaint ¶ 46.)

Defendants and Tax Group, unlawfully and without authorization, used their float, to fund and finance their own ventures for their individual gain and benefit. (Complaint ¶ 47.)

On the basis of the allegations outlined above, Plaintiff filed this putative diversity class action alleging the following causes of action: 1) RICO violation, 2) fraud, 3) conversion, 4)

3

1  conspiracy, 5) breach of contract, 6) negligence, 7) California Business and Professions Code
2  Section 17200 violation, 8) constructive trust, and 9) recovery against bond.

3  Presently before the Court is Defendants' motion to dismiss for lack of personal jurisdiction.
4  (Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, hereafter,
5  "Motion," Docket Item No. 11.)

### III. STANDARDS

Motions to dismiss for lack of personal jurisdiction are brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Although the defendant ordinarily files such a motion, it is the plaintiff that bears the burden of proof as to the necessary jurisdictional facts. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). However, the plaintiff need only make a prima facie showing that personal jurisdiction exists if the defendant files its motion to dismiss as an initial response. Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). To make a prima facie showing, the plaintiff need only to demonstrate facts that if true would support jurisdiction over the defendant. Data Disc, 557 F.2d at 1285. The plaintiff must make a prima facie showing as to each defendant. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

A federal district court may exercise personal jurisdiction to the same extent as a state court of the state in which the district court sits. Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 108 (1987). Since California courts extend jurisdiction to the very limits of the federal Constitution, federal courts in California need only determine whether the exercise of jurisdiction would comport with due process. See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986)

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Later cases have clarified that the minimum contacts must be "purposeful acts." Burger King v. Rudzewicz, 471 U.S. 462, 474 (1985). A long-arm statute may, consistent with

4

constitutional due process, allow assertion of personal jurisdiction over owners and officers of a corporation if a court finds those officers to have sufficient minimum contacts with the forum state. See Davis v. Metro Productions, Inc., 885 F.2d 515, 522 (9th Cir. 1989).

When a defendant's contacts are not sufficiently systematic and continuous for a court to assert general jurisdiction, the Ninth Circuit uses the following test to evaluate a defendant's contacts for purposes of determining whether specific jurisdiction applies:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

Data Disc, 557 F.2d at 1287.

### IV. DISCUSSION

Defendants move to dismiss on the ground that the Court lacks personal jurisdiction. (Motion at 1.) The Court proceeds to consider whether it may exercise personal jurisdiction over each Defendant under the minimum contacts analysis or under § 1965(b) of RICO.

**A.  Minimum Contacts**

Defendants contend that they are not subject to personal jurisdiction because they are domiciled outside of California and do not conduct business in California. (Motion at 4-5.) Plaintiff contends personal jurisdiction is proper because (1) Defendants' purposefully directed activities at California, and (2) the companies doing business in California that caused the complained of harm were Defendants' alter egos. (Plaintiff's Opposition to Motion to Dismiss at 3, 8, hereafter, "Opposition," Docket Item No. 18.)

**1.  Purposeful Direction**

Plaintiff contends that Defendants' contacts through Tax Group and Advance were sufficient for the Court to establish personal jurisdiction over Defendants. (Opposition at 7.)

In Calder v. Jones, the Supreme Court found that the defendants' "status as employees does not somehow insulate them from jurisdiction." 465 U.S. 783,790 (1984) Using this premise, courts

5

have found that owners and officers of a corporation have sufficient minimum contacts with a forum state for it to maintain personal jurisdiction when they purposely direct activities at the forum and cause financial harm to others. See, e.g., Davis, 885 F.2d at 522. Davis involved a suit by a disappointed buyer of a defective tax shelter against a corporation, and its sole shareholders and officers, for fraud and unlawful securities transactions. Id. at 516. The Ninth Circuit found that the forum state properly asserted personal jurisdiction over the corporation's shareholders and officers because the corporation had purposely directed its activities concerning the defective tax product at individuals in the forum state and because the defendants were owners and officers of the corporation. Id. at 522.

Similarly, this case involves allegations that Defendants purposely directed their activities at an individual in California. Like the defendants in Davis, Okun and Simring allegedly entered into tax transactions using corporate entities, of which they were owners or officers, with the intent to defraud Plaintiff. (Complaint ¶¶ 13-14.) Okun owns Advance and Simring has not contested Plaintiff's allegation that he is the President and CEO of Tax Group, Advance's parent company. (Okun Decl. ¶ 29; Simring Decl. ¶ 1.) Plaintiff's other allegations regarding Okun, Simring, IPofA, and Holdings as to their involvement in the transaction at issue go largely, if not entirely, undisputed. Okun and Simring only declare that they were not involved in the day to day operation of Advance. Id.

Accordingly, Plaintiff's has alleged facts sufficient to make a prima facie showing that Defendants purposefully directed their activities at California, causing harm to Plaintiff. While it is sufficient for the Court to exercise personal jurisdiction over all of the Defendants based on the above alleged facts, the Court proceeds to consider whether Plaintiff's alter ego theory provides additional support for the exercise of jurisdiction.

6

### 2. Alter Ego

Plaintiff contends that the Court has personal jurisdiction over Defendants because they are the alter ego of Tax Group, now in bankruptcy, whose subsidiary Advance, was a qualified intermediary doing business in California. (Opposition at 3.)

An individual's "mere association with a corporation that causes injury in the forum state" is not sufficient, in itself, to permit that forum to assert personal jurisdiction over the person. Davis, 885 F.2d at 520. For a court to maintain jurisdiction over the individual for the corporation's acts, there must be a reason for the court to disregard the corporate form. Id. A court may ignore the corporate form in determining whether to assert personal jurisdiction when the corporation is the agent or alter ego of the individual defendant. Id. Since this is a diversity case, California substantive law applies to the issue of alter ego liability.[1] Downing v. Abercrombie and Fitch, 265 F.3e 994, 1005 (9th Cir. 2001). To properly allege alter ego liability in California, a plaintiff must establish: (1) there is a unity of interest and ownership between defendants and their purported alter egos such that their separate personalities no long exist; and (2) an inequitable result will follow if alter ego liability is not established. Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 741 (1998).

To satisfy the first prong of the unity of interest test, a plaintiff must show specific conduct by a defendant toward the purported alter ego that relegates the latter to "an instrumentality, agency, conduit or adjunct" of the former. Id.

With respect to Defendants' specific conduct, Plaintiff alleges as follows:

(1) that Defendants commingled and misappropriated money of Holdings for the purpose of defrauding Plaintiff; and (2) that Holdings was "a mere shell, instrumentality, and conduit though which Defendants . . . carried on their business of . . . defrauding numerous clients ... and converting the assets of . . . clients to their own individual uses." (Complaint ¶¶ 20-21.)

---

[1] Plaintiff alleges diversity jurisdiction and federal question jurisdiction. Regardless, California law applies regarding substantive issues of corporate law.

7

Plaintiff repeats nearly identical allegations as to IPofA and Tax Group. (Complaint ¶¶ 23-24, 26-27.) More specifically, Plaintiff alleges:

> (1) that she tendered $1,356,294.58 to Defendants through Advance; and (2) that Defendants used the funds for their own personal benefit and commingled them by withdrawing the funds and depositing them in separate accounts and using them to finance their own ventures. (Complaint ¶¶ 38-47.)

Significantly, Okun admits that Tax Group is the parent company of Advance. (Okun Decl. ¶ 26.) Okun admits to being the sole owner of Holdings, the sole member of IPofA, and the sole owner and officer of Advance. (Okun Decl. ¶¶ 1, 29.) Simring admits to being an officer of Holdings. (Simring Decl. ¶ 1.) Simring denies being an owner of Advance, but does not deny being an officer of Tax Group. (Simring Decl. ¶ 8.)

Since Defendants filed their motion to dismiss as there initial response, the Court assumes that Plaintiff's allegations with respect to personal jurisdiction are true. Data Disc, 557 F.2d at 1285. The Court finds that the allegations, when viewed under this standard, are sufficient for the Court to infer a unity of interest as to Okun, Holdings, and IPofA with Tax Group and Advance. However, Plaintiff's allegation are not sufficiently stated so as to show a unity of interest as to Simring with either Advance or Tax Group. The mere allegation that Simring is an officer of Tax Board or Holdings, without also alleging an ownership interest in those entities, is not sufficient to permit the Court to assert personal jurisdiction over Simring under an alter ego theory. See Davis, 885 F.2d at 520.

To satisfy the second prong of the unity of interest test, a plaintiff must show that the failure to recognize the defendant as an alter ego will promote injustice. See Laird, 68 Cal. App. 4th at 741. In this case, Plaintiff alleges that Defendants converted $1,356,294.58 of her money and transferred the money through other companies and accounts for their sole benefit. (Complaint ¶¶ 38-47.) Assuming that her allegations are true, it can be inferred that she will not recover from Defendants' alter egos, Tax Group and Advance, because those entities are in bankruptcy proceedings. Id.

8

Further, since Holdings and IPof A are Virginia corporations and Okun and Simring are residents of Florida, no other forum has a better claim for jurisdiction over all Defendants. (Okun Decl. ¶¶ 2-29; Simring Decl. ¶ 1.) Thus, the injustice prong of the unity of interest test is met.

The Court finds that both prongs of the unity of interest test have been satisfied for Defendants Holdings, IPofA, and Okun. While the Court has found that the first prong has not been satisfied with respect to Defendant Simring, the Court finds that his alleged purposeful activities as President and CEO of Tax Group are sufficient to establish minimum contacts as to him as well. Further, since the second prong of the unity of interest test is met for all Defendants, the exercise of personal jurisdiction would be reasonable.

Accordingly, Plaintiff's has alleged facts sufficient to make a prima facie showing that the Court may exercise personal jurisdiction over all Defendants based on the alter ego theory.

**C.     RICO**

Alternatively, Plaintiff contends that the Court has personal jurisdiction over all Defendants under 18 U.S.C. § 1965(b) of RICO. (Opposition at 9.) Since the Court has found personal jurisdiction over each Defendant on other bases, the Court discusses Plaintiff's RICO claim only briefly.

To impose nationwide service under § 1965(b), "a court must have personal jurisdiction over at least one of the participants in an alleged multi-district conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 538-39 (9th Cir. 1986).

Here, Plaintiff alleges a single nationwide conspiracy, involving all of the Defendants, to acquire 1031 exchange companies and, after gaining control of each company's proceeds and float, to use the acquired money for Defendants' own gain and benefit. (Complaint ¶¶ 48-54.) Without considering the merits of these allegations, the Court finds that it does have personal jurisdiction

9

over at least one of the Defendants, namely, Okun, and that there is no other district in which a court would have jurisdiction over all of the alleged co-conspirators.

## V. CONCLUSION

The Court DENIES Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. Defendants shall file their Answer pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.[2]

The Court sets a Case Management Conference for **January 14, 2008 at 10 A.M.** Pursuant to the Civil Local Rules of Court, the parties shall meet and confer and file a Joint Case Management Statement by **January 4, 2008.**

Dated: November 29, 2007

JAMES WARE
United States District Judge

---

[2] "[I]f the court denies [a] motion [permitted under this rule], the responsive pleading shall be served within 10 days after notice of the court's action. . ." Fed. R. Civ. P. 12(4)(A).

10

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brandon Adam Block brandon@bblocklaw.com
Kathleen Card kathy@parrlawgroup.com
Natalia Litchev natasol@comcast.net
Shawn Robert Parr shawn@parrlawgroup.com
Sujata Trivedi Reuter sujata@parrlawgroup.com

**Dated:  November 29, 2007**                    **Richard W. Wieking, Clerk**

**By:  /s/ JW Chambers**
        **Elizabeth Garcia**
        **Courtroom Deputy**