1  Shawn R. Parr, Ca. Bar No. 206616
   **PARR LAW GROUP**
2  150 Almaden Blvd., Suite 1380
   San Jose, CA  95113
3  Telephone: (408) 267-4500
   Facsimile:  (408) 267-4535
4

5  Robert L. Brace, Ca. Bar No. 122240
   Michael P. Denver, Ca. Bar No. 199279
6  **HOLLISTER & BRACE**
   1126 Santa Barbara Street
7  Santa Barbara, CA  93101
   Telephone: (805) 963-6711
8  Facsimile:  (805) 965-0329

9

10

   **UNITED STATES DISTRICT COURT**

   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12  ANITA HUNTER,                              **Case No. C07-02795 JW**
                                               **[the Honorable James Ware]**
                   Plaintiff,
13
    vs.
14
                                               **PLAINTIFF'S OPPOSITION**
    EDWARD H. OKUN, OKUN HOLDINGS,             **TO DEFENDANT SIMRING'S**
15  INC., INVESTMENT PROPERTIES OF             **RENEWED RULE 12(B)(2)**
    AMERICA, LLC, RICHARD B. SIMRING, and      **MOTION TO DISMISS**
16  DOES 1 through 50, inclusive,

17                 Defendants.

18

19

20        Defendant Richard B. Simring ("Simring") has filed a renewed Motion to Dismiss

21  (Docket No. 58) pursuant to F.R.C.P. 12(b)(2) contending that this Court lacks personal

22  jurisdiction over Simring.  Plaintiff Anita Hunter ("Hunter") by and through her attorneys of

23  record hereby opposes Simring's renewed Motion and requests that this Court issue an Order

24  denying it.

25  \\

26  \\

27

28

1  | I.      **INTRODUCTION.**

2           This Court has already ruled that it holds personal jurisdiction over Simring on at least

3  two independent grounds. (Docket No. 39).  No new facts have come to light which could justify

4  a reversal of that ruling.  Nonetheless, Simring has renewed his Motion to Dismiss challenging

5  personal jurisdiction.  The renewed Motion, which is based upon the same arguments as the

6  original denied Motion, is again founded upon Simring's sworn declaration that he had nothing

7  to do with Hunter's losses and otherwise has no minimum contacts with California.  While

8  Simring has presented no new facts to justify a reversal of the prior ruling, Hunter has recently

9  obtained documentary evidence which indisputably shows that the prior ruling was correct.

10 Moreover, the newly obtained materials strongly suggest that the sworn representations issued by

11 Simring, who is a lawyer, are blatant misrepresentations.  The truth is that Simring personally

12 directed the transaction which caused Hunter's harm.  The renewed Motion should be denied just

13 like the original and this case should move forward.

14 | II.     **SIMRING'S  RENEWED MOTION SHOULD BE DENIED BECAUSE SIMRING**

15 |         **PERSONALLY DIRECTED THE TRANSACTION WHICH CAUSED**

16 |         **HUNTER'S LOSS AND OTHERWISE HAD MINIMUM CONTACTS WITH**

17 |         **CALIFORNIA.**

18          A full discussion of the law concerning a federal court's power to assert personal

19 jurisdiction over non-resident defendants is accurately set forth in the Court's prior Order which

20 found that the Court holds personal jurisdiction over Simring (Docket No. 39).  Hunter hereby

21 incorporates that discussion of the law (and the entire Order) into this Opposition by reference

22 thereto.[1]  As set forth in the prior Order, the Court has already determined that it has personal

23 jurisdiction over Simring because: (1) Plaintiff made a *prima facia* showing that Simring and the

24 other "Defendants purposefully directed their activities at California, causing harm to the

25 Plaintiff" (Docket No. 39, p.6:19-21); (2) Simring's "alleged personal activities as President and

26 CEO of Tax Group are sufficient to establish minimum contacts..." (Docket No. 39, p.9:6-7); and

27 (3) the nationwide service provisions under 18 U.S.C. § 1965 (b) of RICO confer an alternative

28

---

[1] Hunter also incorporates her prior Opposition materials (Docket No.s 18 - 26) into this Opposition by reference
thereto.

**PLAINTIFF'S OPPOSITION TO DEFENDANT SIMRING'S RULE 12(B)(2) MOTION TO DISMISS**

1   and independent basis for jurisdiction, to wit, "the Court finds that it does have personal

2   jurisdiction over at least one of the defendants, namely, Okun, and that there is no other district

3   in which a court would have jurisdiction over all of the alleged co-conspirators." (Docket No. 39,

4   pp.9:25-10:2).  Simring has not presented any new facts which justify a reversal of the Court's

5   prior determination that it holds personal jurisdiction over Simring.  On the other hand,

6   documentary evidence recently obtained by Hunter underscores the correctness of the prior

7   Order which should end the discussion once and for all.  It is now indisputable that Hunter's

8   claims arise out of Simring's California related contacts and that Simring otherwise had

9   sufficient contacts with California for this Court to exercise personal jurisdiction over Simring.

10  **A.      Hunter's claims arise out of Simring's California based contacts.**

11          As in the original Motion, Simring again argues that the Court cannot assert personal

12  jurisdiction because, Simring swears, he had no contacts with California and had nothing to do

13  with Hunter's loss of 1031 exchange funds.  Simring's sworn statements simply are not true.

14  The truth is that: (1) Simring was the CEO of 1031 Advance, Inc., a California corporation

15  located in San Jose, California ("1031 Advance"), which contracted with Hunter, a California

16  resident to effectuate a 1031 exchange a piece of California real property; (2) the terms of the

17  contract between Hunter and 1031 Advance specified that California law governed; (3) Hunter

18  sold the property, 1031 Advance accepted the sale proceeds totaling $1,356,294.58 and, as

19  agreed, placed Hunter's money into a safe, secure and segregated account at Countrywide Bank;

20  (4) Simring himself communicated with Hunter in California by telephone and email and was

21  otherwise personally involved with Hunter's exchange of the California property; (5) Simring

22  had the ability to control Hunter's funds deposited with the California corporation; (6) Simring

23  personally and purposefully exercised his control over Hunter's funds deposited in Hunter's

24  segregated account; and (7) Simring directed that Hunter's funds be taken out of that safe haven

25  and diverted into an account in the name of 1031 Advance (not Hunter) at Wachovia Bank,

26  whereafter Hunter's funds disappeared into Okun's Ponzi scheme as alleged in Hunter's

27  complaint.  [See the accompanying Declaration of Hunter ("Decl. Hunter"), ¶¶ 3-12].

28          The majority of Simring's above addressed California contacts are already established in

the Court's prior Order (Docket No. 39).  However, the final points addressing Simring's actions

3

1   whereby he took control over a Californian's 1031 exchange funds and transferred those funds

2   from a safe, protected trust account into a nationwide Ponzi scheme, are not.  These additional

3   facts are supported by newly discovered documentary evidence, a copy of which is attached as

4   Exhibit 1 to the accompanying Declaration of Hunter, which consists of:  (1) An email dated

5   April 26, 2007, sent by Simring to, among others, Sally Young of Countrywide Bank ("Young"),

6   wherein Simring directs Countrywide to take "all funds" out of Countrywide account # 423806

7   (Hunter's account) and to wire those funds to Wachovia Bank account # 2000031753272 (1031

8   Advance's account);[2]  (2) wire confirmation materials demonstrating that Simring's instructions

9   were followed causing $1,365,301.30 to be sent from Hunter's Countrywide account # 423806 to

10  the referenced Wachovia account belonging to 1031 Advance; and (3) an email dated March 6,

11  2008 whereby Young of Countrywide transmitted to Hunter the Simring wire instructions and

12  resultant wire confirmation materials.  (Decl. Hunter ¶¶ 5-10).[3]  These materials directly

13  contradict Simring's sworn statement that he did nothing to harm Hunter in California.  It is now

14  evident that that Simring personally directed the transaction which proximately caused Hunter's

15  damages and that Hunter's claims arise directly out of Simring's California related contacts.  The

16  new evidence confirms that the Court's prior finding of personal jurisdiction over Simring was

17  100% correct.

18  **B.    The Court's prior ruling that it holds personal jurisdiction was 100% correct.**

19          Simring has offered no new information which supports a reversal of the prior Order and

20  Hunter's newly discovered evidence reinforces the correctness of the Order because it

21  indisputably demonstrates that: Simring "purposefully availed" himself to this jurisdiction;

22  Hunter's causes of action arise out of Simring's forum-related contacts; and the exercise of

23  personal jurisdiction comports with notions of "fair play and substantial justice."  *Burger King*

24  *Corp. v. Rudzewicz*, 471 US 462, 477-478, 105 S. Ct. 2174, 2184-2185 (1985); *Haisten v. Grass*

---

26  [2] This email was apparently printed by Simring, signed by Simring and then faxed as indicated thereon which
27  provides an additional basis to confirm the authenticity of Simring's directive to Countrywide to move Hunter's
    funds into Okun's Ponzi scheme.

28  [3] The chain of custody for this recently obtained documentary evidence may be authenticated by Countrywide if
    Simring denies the materials' authenticity or if the Court otherwise requires.  Otherwise, Simring's renewed
    jurisdictional challenge should be rejected outright.

1  *Valley Medical Reimbursement Fund, Ltd.*, 784 F2d 1392, 1397 (9th Cir. 1986). The Court's

2  prior ruling is clearly reasonable because it is supported by the following seven factors:

3    1.    The extent of defendant's purposeful interjection;

4    2.    The burden on defendant in defending in the forum;

5    3.    The extent of conflict with the sovereignty of the defendant's state;

6    4.    The forum state's interest in adjudicating the dispute;

7    5.    The most efficient judicial resolution of the controversy;

8    6.    The importance of the forum to plaintiff's interest in convenient and effective

9          relief; and,

10   7.    The existence of an alternative forum. *Id.*

11  **1.    Simring purposefully availed himself to California's Jurisdiction and the causes of**

12  **action alleged against Simring arise out of his California contacts.**

13        Simring was the CEO of 1031 Advance, a California corporation which contracted to

14  perform a 1031 exchange for Hunter, a Californian. California law governed the contract.

15  Simring personally and purposefully exercised control over Hunter's funds and transferred them

16  from a protected trust account into a Ponzi scheme. But for Simring's California related

17  contacts, Hunter would not have lost her funds. Simring's California contacts are sufficient for

18  this Court to exercise personal jurisdiction over Simring.

19  **2.    There is no unfair burden placed on Simring by this Court's exercise of personal**

20  **jurisdiction over him.**

21        The mere fact that local litigation is inconvenient (or some other forum is more

22  convenient) is not enough to support a finding of an unreasonable burden. Litigation must be so

23  gravely difficult that it puts the defendant to a *severe disadvantage* in comparison to his or her

24  opponent. Merely requiring the nonresident to defend locally is not constitutionally

25  unreasonable "in this era of fax machines and discount air travel." *Sher v. Johnson*, 911 F.2d

26  1357, 1365 (9th Cir. 1990). Simring will not be unfairly burdened by defending in California.

27        Moreover, if Simring as the CEO of 1031 Advance desired for whatever reason to initiate

28  suit against Hunter, Simring had the right to do so in California because the 1031 Advance

exchange agreement was executed in California and it specified that California law governs. It

5

1   would be unfair to require Hunter to litigate the case any other way.

2   **3.      There is no conflict between California and the Defendant's State.**

3          There is no conflict created with Simring's home state or any other state by this Court's

4   exercise of personal jurisdiction over Simring.  The defendant did business in California to earn

5   money.  It is reasonable that Simring may be sued in California for his misdeeds or negligence, if

6   any.  If necessary, this Court is fully able to properly interpret another State's law.

7   **4.      California has an interest at stake.**

8          Simring reached out and took Hunter's 1031 exchange funds and routed them into

9   Okun's Ponzi scheme thereby harming a Californian and otherwise disrupting the purchase

10  and/or sale of real property in California.  The interest of the State of California in protecting its

11  residents from the type of abuses and damages that are present in this case is compelling and far

12  outweighs any argument of inconvenience Simring might offer.

13  **5.    The most efficient resolution; the importance of the forum to Plaintiff's case; and, the**

14  **        non-existence of an alternate forum.**

15         The three final criteria to establish whether it is "reasonable" to subject the defendant to

16  California jurisdiction are all satisfied because, as addressed in the Court's prior Order, "no other

17  forum has a better claim for jurisdiction over all Defendants." (Docket No. 39, p.9:2).  This

18  Court is Hunter's best and only chance at an efficient resolution and there is no alternate forum

19  for this case.

20  **III.    CONCLUSION.**

21         Based on the foregoing, Hunter requests that this Court deny Simring's renewed Motion

22  challenging personal jurisdiction.

23  Dated: May 12, 2008                          THE PARR LAW GROUP

24

25                                               By: _____/s/_____

26                                               Shawn R. Parr, Ca. Bar No. 206616
                                                 150 Almaden Blvd., Suite 1380
27                                               San Jose, CA  95113
                                                 Telephone: (408) 267-4500
28                                               Facsimile:  (408) 267-4535

**PLAINTIFF'S OPPOSITION TO DEFENDANT SIMRING'S RULE 12(B)(2) MOTION TO DISMISS**

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert L. Brace, Ca. Bar No. 122240
Michael P. Denver, Ca. Bar No. 199279
HOLLISTER & BRACE
1126 Santa Barbara Street
Santa Barbara, CA 93101
Telephone: (805) 963-6711
Facsimile: (805) 965-0329

PLAINTIFF'S OPPOSITION TO DEFENDANT SIMRING'S RULE 12(B)(2) MOTION TO DISMISS