1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11  Anita Hunter,                          NO. C 07-02795 JW

12          Plaintiff,              **ORDER DENYING DEFENDANT**
      v.                            **SIMRING'S RENEWED MOTION TO**
13                                  **DISMISS FOR LACK OF PERSONAL**
    Edward H. Okun, et al.,         **JURISDICTION**
14
            Defendants.
15  _____/

16                    **I.  INTRODUCTION**

17          Anita Hunter ("Plaintiff") filed this putative diversity class action against Edward Okun

18  ("Okun"), Okun Holdings, Inc. ("Holdings"), Investment Properties of America, LLC ("IPofA"),

19  and Richard Simring ("Simring") (collectively, "Defendants"), alleging *inter alia*, violation of the

20  Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, conversion, and breach of

21  contract.

22          Presently before the Court is Defendant Simring's Renewed Motion to Dismiss for Lack of

23  Personal Jurisdiction.  (hereafter, "Motion," Docket Item No. 58.)  The Court found it appropriate to

24  take the motion under submission without oral argument.  See Civ. L.R. 7-1(b).  Based on the papers

25  submitted to date, the Court DENIES Defendant Simring's Renewed Motion.

26
27
28

**United States District Court**
For the Northern District of California

1

**United States District Court**
For the Northern District of California

## II. BACKGROUND

In a Complaint filed on May 30, 2007,[1] Plaintiff alleges as follows:

Defendant Okun is an individual who resides in Florida. (Complaint ¶ 11.) Defendant Holdings is a limited liability company organized and existing under the laws of Virginia, of which Okun is a member and holds the position of Director. (Id. ¶ 12.) Defendant IPofA is a limited liability company organized and existing under the laws of Virginia, of which Okun is a member and holds the position of CEO. (Id. ¶ 13.) Defendant Simring is an individual who resides in Florida. (Id. ¶ 15.) Defendants owned or operated The 1031 Tax Group, LLC ("Tax Group"), a company that facilitated 1031 exchanges for real estate owned by certain real estate investors. (Id. ¶ 33.) Simring was the President and CEO of Tax Group. (Id. ¶ 15.)

From 2006 through May 13, 2007, Defendants and Tax Group acquired various privately held exchange companies throughout the United States. (Id. ¶ 34.)

On March 27, 2007, to accomplish a 1031 exchange, Plaintiff entered into an Exchange Agreement ("Agreement") with Defendants through Tax Group's subsidiary, 1031 Advance, Inc. ("Advance") located in San Jose, California. (Id. ¶ 35.) Pursuant to the terms of the Agreement, the proceeds from the sale of Plaintiff's real property (hereafter "exchange proceeds") were to be held by Defendants, in trust, in a qualified intermediary account with a nationally insured bank or savings institution. (Id. ¶ 36.)

On March 29, 2007, Plaintiff deposited with Defendants and Defendants accepted from Plaintiff exchange proceeds in the amount $1,356,294.58. (Id. ¶ 38.) Defendants then deposited Plaintiff's exchange proceeds into the account held in the name of 1031 Advance, Inc., at Countrywide Bank in Alexandria, Virginia. (Id. ¶ 39.)

---

[1] (Complaint, Docket Item No. 1.)

2

United States District Court

For the Northern District of California

1    On April 30, 2007, Plaintiff received notice from Defendants that the San Jose

2    subsidiary of Tax Group had ceased conducting business.  (Id. ¶ 40.)  Plaintiff demanded the

3    return of her exchange proceeds from Defendants, and Defendants refused.  (Id. ¶ 41.)

4    Defendants had access to the exchange proceeds deposited by Plaintiff through

5    financial accounts held by Tax Group and its subsidiaries for the benefit of their clients.  (Id.

6    ¶ 42.)  Defendants used Plaintiff's exchange proceeds for their individual benefit and for the

7    benefit of all Defendants and Tax Group by withdrawing the exchange proceeds and

8    depositing them into accounts held by or for the benefit of Defendants and Tax Group or by

9    purchasing real and personal property for the benefit of Defendants and Tax Group,

10   effectively commingling Plaintiff's exchange proceeds with their own assets.  (Id. ¶ 43.)

11   Defendants and Tax Group were operating a fraudulent investment scheme based on

12   the premise that they would gain new clients to deposit their exchange proceeds with

13   Defendants and Tax Group.  Defendants and Tax Group could then replenish Plaintiff's

14   account from which Defendants and Tax Group had withdrawn Plaintiff's exchange

15   proceeds.  (Id. ¶ 44.)

16   On May 14, 2007, Tax Group filed a voluntary petition in the U.S. Bankruptcy Court

17   for the Southern District of New York.  Tax Group's Schedules allege approximately

18   $133,000,000.00 in outstanding liabilities, the majority of which is owed to exchange clients

19   of Tax Group and its subsidiaries.  (Id. ¶ 45.)

20   The business of exchange accommodators is conducted substantially without

21   governmental regulation, and such exchange companies have control over large sums of

22   money, which they hold in trust for their clients.  These funds are commonly referred to as

23   "float."  Exchange companies predominately use segregated or pooled accounts to invest

24   their float in financial institutions that provide a return and, more importantly, that provide

25   liquidity to the exchange accommodator.  (Id. ¶ 46.)

26

27

28                                          3

United States District Court

For the Northern District of California

1    Defendants and Tax Group, unlawfully and without authorization, used their float to

2    fund and finance their own ventures for their individual gain and benefit.  (Id. ¶ 47.)

3    On the basis of the allegations outlined above, Plaintiff filed this putative diversity class

4    action alleging the following causes of action: (1) RICO violation, (2) fraud, (3) conversion, (4)

5    conspiracy, (5) breach of contract, (6) negligence, (7) California Business and Professions Code §

6    17200 violation, (8) constructive trust, and (9) recovery against bond.  (Id.)

7    On November 13, 2007, Defendants moved to dismiss the Complaint on the ground that they

8    were not subject to personal jurisdiction in California.  (See Docket Item No. 34.)  On November 29,

9    2007, the Court denied Defendants' motions.  (November 29, 2007 Order, Docket Item No. 39.)

10   With respect to Defendant Simring, the Court found that he was subject to jurisdiction because

11   Plaintiff had adequately alleged he purposefully directed his activities at the California and caused

12   Plaintiff harm.  (Id. at 5-6.)

13   Presently before the Court is Defendant Simring's renewed motion to dismiss for lack of

14   personal jurisdiction.

15                          **III.  DISCUSSION**

16   Defendant Simring contends that new evidence presented by him requires that the Court

17   reverse its finding that he is subject to personal jurisdiction in California.  (Motion at 2.)  The Court

18   applies the standards articulated in its November 29, 2007 Order for considering whether a

19   defendant is subject to personal jurisdiction in California

20   The one significant new piece of evidence Defendant Simring presents is that he was merely

21   an "interim CEO" of Tax Group and Advance for three days, and that he only took that position

22   because the previous CEO had abruptly resigned.  (Declaration of Defendant Simring in Support of

23   His Renewed Motion to Dismiss for Lack of Personal Jurisdiction ¶ 8, hereafter, "Simring Decl.,"

24   Docket Item No. 59.)  He further declares as follows:

25        I never was involved in the day-to-day operations of Tax Group or Advance, and was not
          involved in any manner in the transactions or alleged conduct at issue in this lawsuit.
26        . . .

27

28                                   4

United States District Court

For the Northern District of California

1
2
3
4

I have never accepted, received, held or deposited any of the proceeds from the sale of Plaintiff's real property.
. . .
I did not have access to any exchange proceeds deposited by Plaintiff in Advance's account, and I did not withdraw or remove any exchange proceeds deposited by Plaintiff in such account.

(Id. ¶¶ 8-9.)

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

However, Plaintiff has presented documentary evidence which directly contradicts these statements.[2]  For example, bank records reflect that Plaintiff's exchange proceeds were wired from Plaintiff's segregated account at Countrywide Bank to an Advance account at Wachovia Bank on April 26, 2007.  (Declaration of Plaintiff Hunter in Support of Her Opposition, hereafter, "Hunter Decl.," Ex. 1, Docket Item No. 63.)  An email between Simring and Countrywide reveals that Simring personally directed Countrywide to wire the funds from the segregated Countrywide account to the Wachovia account.  (Id.)  This evidence directly contradicts Defendant Simring's statements in his declaration that he (1) "was not involved in any manner in the transactions or alleged conduct at issue in this lawsuit," and (2) "did not withdraw or remove any exchange proceeds deposited by Plaintiff."  Moreover, Defendant Simring's statement that he was only CEO for three days lacks credibility because Plaintiff presents communications spanning more than three days in which Defendant Simring appears to be holding himself out as CEO of Tax Group and Advance.  (Hunter Decl., Exs. 1, 2.)

Accordingly, the Court finds that additional declaration testimony proffered by Defendant Simring, without more, provides an insufficient basis for the Court to reverse its November 29, 2007 Order, which found that he was subject to personal jurisdiction in California.

//

25
26
27

[2]  Defendant Simring objects to this evidence under Federal Rules of Evidence 602, 802, 901, 1002.  (Docket Item No. 66.)  Only Defendant's objection on the ground of lack of authentication appears well stated.  However, since presumably Plaintiff could provide a witness to authenticate these documents at trial, the Court OVERRULES Defendant Simring's objections as they relate to Plaintiff's Opposition.

28

1

### IV.  CONCLUSION

The Court DENIES Defendant Simring's Renewed Motion to Dismiss for Lack of Personal

Jurisdiction.

Dated:  June 5, 2008

_____
JAMES WARE
United States District Judge

United States District Court
For the Northern District of California

6

1    **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2    Brandon Adam Block brandon@bblocklaw.com
     Kathleen  Card kathy@parrlawgroup.com
3    Natalia  Litchev natasol@comcast.net
     Shawn Robert Parr shawn@parrlawgroup.com
4    Sujata Trivedi Reuter sujata@parrlawgroup.com
     Thomas G. Foley tfoley@foleybezek.com
5

6    **Dated:  June 5, 2008**                                      **Richard W. Wieking, Clerk**

7

8                                                          **By:   /s/ JW Chambers**
                                                              **Elizabeth Garcia**
9                                                             **Courtroom Deputy**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California