1  Shawn R. Parr, Ca. Bar No. 206616
   **THE PARR LAW GROUP**
2  1625 Alameda Blvd., Suite 101
   San Jose, CA 95126
3  Telephone: (408) 267-4500
4  Facsimile: (408) 267-4535

5  Robert L. Brace, Ca. Bar No. 122240
   Michael P. Denver, Ca. Bar No. 199279
6  **HOLLISTER & BRACE**
   1126 Santa Barbara Street
7  Santa Barbara, CA 93101
   Telephone: (805) 963-6711
8  Facsimile: (805) 965-0329

9  Thomas Foley, Ca. Bar No. 65812
   **FOLEY, BEZEK, BEHLE & CURTIS LLP**
10 15 W. Carrillo Street
   Santa Barbara, CA 93101
11 Telephone: (805) 962-9495
12 Facsimile: (805) 962-0722
   Email: tfoley@foleybezek.com
13 *Counsel for Plaintiff Hunter and the Class*

14                UNITED STATES DISTRICT COURT
15             FOR THE NORTHERN DISTRICT OF CALIFORNIA

16 | ANITA HUNTER, | Case No. 5:07-CV-02795-JW |
17 | and all others similarly situated, | [the Honorable James Ware] |
|  |  |
18 | Plaintiffs, | PLAINTIFF'S NOTICE OF MOTION |
|  vs. | AND MOTION FOR LEAVE TO FILE |
19 |  | A FIRST AMENDED COMPLAINT |
| EDWARD H. OKUN, OKUN HOLDINGS, INC., | AND FOR THE ENTRY OF A CASE |
20 | INVESTMENT PROPERTIES OF AMERICA, | MANAGEMENT ORDER; |
| LLC, RICHARD B. SIMRING, and DOES 1 | MEMORANDUM OF POINTS AND |
21 | through 50, inclusive, | AUTHORITIES |
22 | Defendants. | Hearing Date: October 20, 2008 |
|  | Time:            9:00 a.m. |

23

24 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

25     PLEASE TAKE NOTICE that on October 20, 2008, at 9:00 a.m., or as soon thereafter as

26 the matter can be heard by United States District Judge James Ware, at the United States District

27 Court for the Northern District of California, San Jose Division, located at 280 South 1st Street,

28 San Jose California, 95113, Plaintiff Anita Hunter ("Hunter"), on behalf of herself and the Class

of all persons similarly situated, will and hereby does move the Court to enter an Order that: (i) grants Hunter leave to file a First Amended Complaint; and (ii) continues existing case deadlines and approves the entry of an Initial Case Management Order.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Michael P. Denver, all documents and arguments submitted in support hereof and the complete Court file.

Dated: September __, 2008        By: _____
Robert L. Brace, Ca. Bar No. 122240
Michael P. Denver, Ca. Bar No. 199279
**HOLLISTER & BRACE**
1126 Santa Barbara Street
Santa Barbara, CA  93101
Telephone: (805) 963-6711
Facsimile:  (805) 965-0329


Shawn R. Parr, Ca. Bar No. 206616
**PARR LAW GROUP**
1625 Alameda Blvd., Suite 101
San Jose, CA  95126
Telephone: (408) 267-4500
Facsimile:  (408) 267-4535


Thomas Foley, Ca. Bar No. 65812
**FOLEY, BEZEK, BEHLE & CURTIS, LLP**
15 W. Carrillo Street
Santa Barbara, CA  93101
Telephone: (805) 962-9495
Facsimile:  (805) 962-0722
*Counsel for Plaintiff Hunter and the Class*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Anita Hunter ("Hunter"), on behalf of herself and the Class of all others similarly situated (the "Hunter Class"), hereby moves this Court to issue an Order that: (i) grants Hunter leave to file a First Amended Complaint to address newly discovered facts, to identify additional parties and to assert new causes of action; and (ii) continues existing case deadlines and approves the entry of an Initial Case Management Order so that this complex multi-party case and the many thousands of documents that are being produced in it are managed efficiently. The proposed First Amended Complaint and the proposed Initial Case Management Order are attached to the accompanying Declaration of Michael P. Denver as Exhibits 1 and 2 thereto.

## II. BACKGROUND

1031 Advance, Inc. ("1031 Advance") was an exchange intermediary holding clients' money in trust pursuant to Internal Revenue Code Section 1031. 1031 Advance was a subsidiary of The 1031 Tax Group, LLC ("1031 Tax Group") and both companies were controlled by Ed Okun ("Okun"). In April 2007, 1031 Tax Group, 1031 Advance, as well as certain other affiliated exchange intermediaries whose clients' funds were transferred to the control of 1031 Tax Group/Okun (collectively, the "Exchange Entities") failed and clients' trust funds totaling over $130,000,000 vanished. This litigation was filed to recover the missing exchange funds and other consequential damages.

The Parr Law Group, on behalf of Hunter, filed the Complaint in this class action (the "Hunter Action") which alleges various causes of action against four (4) Defendants: Okun; a lawyer, Richard Simring ("Simring"); and two of Okun's entities named Okun Holdings, Inc. ("Okun Holdings") and Investment Properties of America ("IPA"). Hunter alleges that Okun masterminded the theft of millions in client exchange funds so that he could use the money as he saw fit to fund his own lavish lifestyle and personal business interests. Hunter alleges that Okun and the other Defendants who helped Okun are liable for Class Members' lost exchange funds, as well consequential damages. The Defendants deny the allegations.

On May 12, 2008, the law firm of Hollister & Brace ("H&B") was associated into the case (Docket No. 64), primarily due to H&B's experience in representing a class of victims in remarkably similar litigation arising out of the collapse of Southwest Exchange, Inc. ("SWX"), a 1031 exchange accommodator located in Las Vegas, Nevada. SWX collapsed in early February 2007 after one Donald K. McGhan ("McGhan") allegedly looted over $98,000,000 in SWX clients' exchange funds and (just as Okun is alleged to have done) used the funds to finance his own lavish lifestyle and personal business interests. The SWX litigation, which is pending in Federal Court in Nevada, was filed against McGhan and his cohorts, as well as against certain insurance companies and financial institutions who allegedly assisted McGhan. The SWX litigation is proving successful. Over $50,000,000 in settlements have been negotiated to date and several very solvent non-settling defendants remain in the case for a trial, if one is needed.

Using the lessons learned in SWX, upon affiliating into this action H&B commenced its investigation into Okun, his related entities and certain banks, law firms, and others with whom Okun did business and who may be partially liable for the Class Members' damages. Among other things, H&B's investigation included a review of Okun's businesses, communicating with victims to learn the circumstances of their losses, and the issuance of numerous subpoenas to third parties to obtain documents and explore Class Members' potential claims against non-parties. Documents responsive to the subpoenas and H&B's other investigative efforts revealed that, as in the SWX matter, numerous non-thief type parties who wittingly or unwittingly facilitated the theft of exchange funds are potentially liable to the Class and should be named as defendants so that the Class can obtain complete relief.

Based upon Hunter's investigation to date, Hunter now seeks leave to file the First Amended Complaint submitted herewith as Exhibit 1 to the accompanying Declaration. Once filed, the First Amended Complaint will increase the complexity of this matter requiring significant case management.

This case already involves roughly 330 victims. The proposed First Amended Complaint will name numerous new defendants. Many thousands of documents will be produced in initial disclosures and discovery. Oral discovery will be extensive. Mediation should be pursued

whenever and wherever possible. The need for case management is clear. Due to the similarity between this matter and SWX, Hunter is optimistic that the case management framework created in SWX, which has streamlined discovery and promoted several significant early settlements, can be used as the basis for cost-effective case management in this action.

In SWX, the dozens of parties produced over 3,000,000 pieces of documentary evidence. Over 150 depositions have been taken. Many of the documents and deposition transcripts from SWX will be applicable to the Hunter Action because, among other things, several of the new defendants identified in the First Amended Complaint (the insurance broker and certain of the insurers) are also parties in SWX and the claims against those defendants are the same in both cases. In addition, particularly with respect to the insurance portion of this case, numerous documents relevant to this matter have already been produced in SWX and certain insurance issues in this case have already been addressed in SWX depositions and law and motion practice. The work already done in SWX which can be applied to this case should be applied to this case. The SWX documents and depositions transcripts are presently housed in the SWX document depository located at Litigation Services & Technologies in Las Vegas, Nevada. Those materials should be made accessible to the parties in this case. To facilitate that access and to promote case management, Hunter proposes that the Court designate the same document depository used in SWX, Litigation Services.[1]

Additionally, Hunter proposes that the well respected mediator appointed by the Court in the SWX litigation, the Honorable Layn Philips, Retired, be appointed as mediator in this case. Judge Phillips' intimate knowledge with the parties, lawyers and issues present in the SWX case, many of which will be the same in this case, should be utilized to promote efficiency and cost savings.

---

[1] Litigation Services is located in Las Vegas, Nevada. The parties to this case will hail from across the country. The documents at Litigation Services will be available electronically. Thus, the location of the document depository will not impact the parties' ability to access the documents. Moreover, Litigation Services' court reporters are licensed in California and Nevada. Finally, Litigation Services, as part of its bid to provide services in this matter, has agreed not to bill parties for court reporter travel expenses, and not to bill for depository set-up fees or user set-up fees which will result in significant savings to the parties.

## III. LEGAL ARGUMENT

Hunter's investigation to date demonstrates that numerous non-parties are at least partially liable for the damages suffered by the Class. The Class is entitled to seek complete relief. The present Complaint will not provide it. A First Amended Complaint must be filed. The complexities of the First Amended Complaint will require comprehensive case management. The management structure should replicate the SWX case management structure to promote efficiency and reduce costs.

### A. Hunter is entitled to file a First Amended Complaint.

Pursuant to the Federal Rules, leave of Court is required for all Amendments except those made "of course" and made pursuant to stipulation, but "leave shall be freely given when justice so requires." [FRCP 15(a)] Federal Policy strongly favors determination of cases on their merits. Therefore the role of pleadings is limited, and leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice resulting from the amendment, or the moving party seeks to amend in bad faith. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *FilmTec Corp. v. Hydronautics*, 67 F. 3d 931, 935-936 (Fed. Cir. 1995); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F. 2d 1149, 1160 (9th Cir. Cal. 1989). A denial of a motion for leave to amend is proper only when there is a showing of substantial prejudice, and the Court must grant an otherwise proper Motion for leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F. 2d 1074, 1079 (9th Cir. Cal. 1990); *Bell Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (holding that any showing of substantial prejudice to the nonmovant must outweigh the prejudice to the movant resulting from denial of the Motion for leave to amend.)

Hunter contends that she effectively already has leave to file a First Amended Complaint pursuant to the Joint Case Management Statement (Docket No. 53), which was incorporated into the Scheduling Order (Docket No. 55), and which establishes that Hunter's pleadings may be amended as new facts arise (Docket No. 53, p.6, ¶ 6). New facts have arisen which require a First Amended Complaint. Alternatively, there is no doubt that Hunter is entitled to leave to file the First Amended Complaint because, due to the present state of the case, the filing of an amended Complaint will not prejudice any defendant.

The present state of the case is as follows: the Defendants have answered the Complaint; a Scheduling Order has been entered; Motions to Dismiss were recently denied; no trial date has been set; and, discovery is ongoing. The filing of a First Amended Complaint could not, at this stage in the case, impair the Defendants' ability to prepare their cases for trial, meaning they will not be prejudiced. To the contrary, the naming of additional Defendants whom Hunter contends are liable for the same damages as Okun and Simring could only benefit Okun and Simring by potentially reducing their proportionate share of liability, if any. On the other hand, if Hunter is not granted leave to amend, Hunter and the Class will be prejudiced in that their rights against the presently named Defendants and/or the proposed new Defendants could be impaired. Hunter should be granted leave to file the First Amended Complaint submitted herewith which will require case dates to be continued and pro-active case management.

**B.    Case dates need to be continued and the Proposed Initial Case Management Order should be entered.**

Hunter requests that existing case dates established in the Scheduling Order (Docket No. 55) and Joint Case Management Statement (Docket No. 53) be continued and a Case Management Order issued. "A schedule may be modified only for good cause and with the Judge's consent." Fed. R. Civ. Proc. 16(b)(4). To establish "good cause", the party requesting to modify the schedule must generally show that, even with the exercise of due diligence, they cannot meet the order's timetable." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Hunter's Motion is supported by such good cause.

The Scheduling Order sets certain deadlines, such as the November 3, 2008 expert disclosure deadline and the January 5, 2009 discovery cut-off. The existing schedule is incompatible with filing the proposed First Amended Complaint, which will bring numerous new parties into the case. Present case dates need to be continued so that the First Amended Complaint can be filed, served and responded to by the numerous new defendants. Denying Hunter's request to amend the schedule would effectively deny Hunter's ability to amend her pleadings. This would unfairly prejudice Hunter and the Class.

7
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT
F:\MATTER\WK3\7316.001 - (OKUN HOLDINGS)\Pleadings\Motions\Motion for Leave to Amend\Motion for Leave to File FAC91008.doc

A Case Management Order is needed so that when the numerous new parties appear, a framework is in place to, among other things, control oral and written discovery, streamline document production and allow for mediation. Good cause exists to alter the Scheduling Order and enter the proposed Case Management Order. *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court execute the accompanying proposed Order granting the Motion in its entirety.

Dated: September 11, 2008

By: _____
Robert L. Brace, Ca. Bar No. 122240
Michael P. Denver, Ca. Bar No. 199279
**HOLLISTER & BRACE**
1126 Santa Barbara Street
Santa Barbara, CA 93101
Telephone: (805) 963-6711
Facsimile: (805) 965-0329


Shawn R. Parr, Ca. Bar No. 206616
**THE PARR LAW GROUP**
1625 Alameda Blvd., Suite 101
San Jose, CA 95126
Telephone: (408) 267-4500
Facsimile: (408) 267-4535


Thomas Foley, Ca. Bar No. 65812
**FOLEY, BEZEK, BEHLE & CURTIS, LLP**
15 W. Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
*Counsel for Plaintiff Hunter and the Class*